IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:    1:22-cv-00271-WJM-NRN

**SHAWNTE WARDEN**, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

**TSCHETTER SULZER, P.C.**, a Colorado professional corporation,

    Defendant.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

## I.  INTRODUCTION

The Court should deny Defendant Tschetter Sulzer, P.C.'s ("Defendant" or "Tschetter") Motion to Dismiss this alleged class action challenging its deceptive eviction tactics. In short, Tschetter files thousands of forcible entry and detainer actions every year and is considered one of Colorado's premiere eviction law firms. In the process of evicting tenants, however, Tschetter routinely violates the federal Fair Debt Collections Practices Act ("FDCPA" or "Act"), 15 U.S.C. § 1692 *et seq*., by intentionally tricking tenants into signing misleading Stipulations.

Rather than accept responsibility for its conduct, let alone offer an apology, Tschetter instead moves to dismiss the lawsuit on the grounds that its alleged misconduct didn't occur in connection with the collection of a debt and that Warden isn't a consumer. Failing that, Tschetter argues that the Complaint lacks specifics necessary to show harassing or oppressive conduct under § 1692. The Court should reject such arguments. As set forth below, Tschetter's false statements and material omissions occurred in connection with the collection of a debt and they caused

1

Plaintiff confusion and damages. At the end of the day Plaintiff Warden pleads more than sufficient facts that, if proven true, would entitle her (and the class she seeks to represent) to relief.

As such, and as set forth more fully below, the Court should deny the Motion to Dismiss and allow the case to proceed.

**II.     ARGUMENT**

Congress enacted the FDCPA to, in part, "eliminate abusive debt collection practices by debt collectors…and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). It is often described by courts as a strict liability statute. *See Johnson v. Riddle*, 305 F.3d 1107, 1122 n. 15 (10th Cir. 2002) (listing cases). To establish a violation of the FDCPA, Warden must show that (1) she is a "consumer" within the meaning of 15 U.S.C. § 1692a(3); (2) the Debt arises out of a transaction entered into primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(6); (3) Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6); and (4) Defendant, through its acts or omissions, violated a provision of the FDCPA.[1]

Tschetter seeks dismissal under Rule 12(b)(1) arguing that its deceptive conduct supposedly didn't occur in connection with the collection of a "debt" and that Warden is not a "consumer." (Def. Mot. 8-12). Tschetter also argues under Rule 12(b)(6) that the Complaint lacks specific facts to state claims under §1692. (Def. Mot. 12-14). As set forth below, these arguments lack merit, and the Court should deny Tschetter's bid to dismiss.

**A.     Tschetter's misleading and deceptive conduct occurred in connection with the collection of a "debt."**

---

[1] Tschetter does not assert that it is not a debt collector. Rather, Tschetter contests the remaining three elements.

Tschetter asserts that the Court lacks subject matter jurisdiction because its deceptive conduct supposedly didn't occur in connection with the collection of any debt. This argument fails. First, Tschetter incorrectly claims that the Stipulation involved "only" the time period in which tenants were required to move out (as opposed to an obligation to pay money). (Def. Mot. 2, 9.) Second, Tschetter places undue weight on *Cook v. Hamrick* to assert that the Stipulation did not arise as part of any consumer transaction. (Def. Mot. 10.) Lastly, Tschetter incorrectly asserts that the eviction did not seek money damages. (Def. Mot. 10-11.)

These arguments are refuted in turn below.

> **1. Contrary to Tschetter's assertions, its deceptive conduct did not merely involve the time-period within which tenants were required to surrender possession.**

Tschetter first claims that the "Complaint is…clear that the alleged deceptive communication is in connection with the *time period* in which a tenant has to move-out and not any connection with the obligation to pay money." (Def. Mot. 9.) According to Tschetter, "Because the alleged communications are not in connection with an obligation to pay money, the FDCPA does not apply. To the extent Plaintiff claims she had unpaid rent payments, that is irrelevant because the alleged wrongful communications were in connection with the Stipulation for possession of the rental unit." (Def. Mot. 10.)

Tschetter's argument falls flat. First, Colorado's eviction statute, C.R.S. § 13-40-104(d), requires that landlords serve a "Ten-Day Demand for Compliance or Possession" before a tenant can be found liable for an unlawful detention. In addition to being a required pre-suit demand, the ten-day notice represents the exclusive cure period during which tenants have a right to pay rent

to avoid eviction. At the time Tschetter sought to evict Warden,[2] after the ten-day cure period expired, a landlord gained the discretion to accept payment to halt an eviction. A residential tenant's right to cure by paying the rent due expired after the tenth day following notice—thereby allowing a landlord/debt collector to leverage the threat of eviction to compel not only the payment of rent but also additional amounts such as late fees and attorney fees.[3]

This occurred here. On January 25, 2021, after the ten-day statutory cure period expired, Warden was informed that she would still be allowed to cure if she paid $3,949.36. (Compl., ¶ 32). This amount exceeded the $3,545.02 that Tschetter had claimed was due in the "Complaint Unlawful Detainer and Money Claim." (Eviction Compl., Ex. B, ¶ 4). Similarly, the Stipulation offered to Warden on January 31, 2021, presented her with an extended window during which time she could attempt to cure through payment while simultaneously ceding her right to contest the entry of judgment for possession. (Compl., Ex. 4.) And in exchange for her promise to vacate before February 11, 2021, the eviction case against her—which, as discussed below, included a claim for money damages—would be dismissed. Viewing the facts in a light most favorable to Plaintiff Warden, it is by no means clear that the Stipulation, and its misleading content, had nothing to do with the claim for damages.

This is especially so when analyzing the issue under the least sophisticated consumer standard, which applies to the instant facts. The least sophisticated consumer standard ensures protection to all "consumers, even the naïve and the trusting, against deceptive debt collection practices, and . . . protects debt collectors against liability for bizarre or idiosyncratic

---

[2] It is worth noting that in C.R.S. § 13-40-115 was amended to allow tenants to cure nonpayment and avoid eviction at any time prior to the issuance of a judgment for possession. C.R.S. § 13-40-115(4) (eff. October 1, 2021).

[3] A tenant that remains in possession also has some leverage to negotiate a waiver of past due rent, fees, and other expenses in exchange for an agreement to vacate by a date certain.

4

interpretations of collection notices." *See Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993) (listing cases). At least five courts of appeal have applied the least sophisticated standard to alleged violations of § 1692e and § 1692f. *Gill v. Credit Bureau of Carbon Cnty.*, Civil Action No. 14-cv-01888-KMT, at 6 (D. Colo. May 5, 2015) (collecting cases) (explaining that the Tenth Circuit has, in an unpublished opinion, "applied an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector.") (*citing Ferree v.* Marianos, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997) (internal quotation marks omitted); *see also Molkandow v. Maury Cobb Attorney At Law, LLC*, Civil Action No. 18-cv-0891-WJM-STV, at 5 (D. Colo. Feb. 12, 2019).[4]

An unsophisticated consumer wouldn't understand the Stipulation to only apply to the question of possession. Under the terms of the Stipulation, the Eviction Complaint seeking money damages was being dismissed, though the issue of damages would apparently be left unresolved. The Stipulation also stated that the tenant may cure, but that the cure would be in the landlord's sole discretion. The least sophisticated consumer standard has resulted in holdings that debt collections communications containing contradictory language concerning a consumer's rights or that are susceptible to more than one reasonable interpretation violate the FDCPA. *See Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991); *see also Dutton v. Wolhar*, 809 F. Supp. 1130 (D. Del. 1992). To the least sophisticated consumer, the Stipulation is contradictory and confusing with

---

[4] Relatedly, courts have applied the FDCPA to litigation activities and filings, including eviction pleadings and notices, finding them to be communications made in connection with the collection of a debt for the purposes of the FDCPA. *Lipscomb v. Raddatz Law Firm, P. L.L.C.*, 109 F. Supp. 3d 251, 261 (D.D.C. 2015); *see also Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014) ("The fact that the threat appears in a lawsuit or other court filing does not diminish the threatening nature of the communication for purposes of the FDCPA."); *Romea v. Heiberger Associates*, 163 F.3d 111 (2d Cir. 1998) (applying FDCPA to notices sent in connection with an eviction-collection lawsuit.)

respect to the nature of the Complaint and what is to become of the money damages. Are they being waived? Can Tschetter (on behalf of the landlord) file a separate lawsuit? Will there be a referral to collections? None of these questions are answered at all—the Stipulation simply states that all rights are reserved.

As such, the Court should reject Tschetter's assertion that the Stipulation merely addressed the issue of possession and had nothing to do with any obligation to pay money. Such a conclusion cannot be reached at the pleadings stage, particularly when viewed in relation to the least sophisticated consumer.

### 2. Tschetter's reliance on *Cook v. Hamrick*, 278 F.Supp.2d 1202 (D. Colo. 2003) is misplaced.

Tschetter also places undue weight on *Cook v. Hamrick*, No. CIV.A. 02-K-768, 278 F.Supp.2d 1202 (D. Colo. Aug. 20, 2003). That case concerned eviction proceedings based on a tenant's alleged breaches of the lease based on noise disturbances. The court ultimately found that the FDCPA was inapplicable because the debt in question, a request for attorney's fees arising out of the proceedings, stemmed from litigation rather than from a consumer transaction such as a residential lease. *Id*., at 1, 5. At no point was past due rent at issue in *Cook*.

That is plainly not the case here where the damages (which, as explained in the next section, were sought in the Eviction Complaint) included past due rent and late fees. As such, the Court should consider *Cook* to be off point.

Furthermore, *Cook* found that "[w]hen an obligation to pay is created by something other than a consumer transaction, the obligation is not a 'debt' as defined by the FDCPA." *Cook v. Hamrick*, 278 F. Supp. 2d 1202, 1205 (D. Colo. 2003). Again, the obligation to pay rent here (which Tschetter filed suit over) arose from a consumer transaction, not from something other than a consumer transaction.

6

> Finally, the FDCPA defines "debt" as
>
> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C.A. § 1692a (West). The property that constituted the subject of the transaction in this case, an apartment for lease, was certainly for household purposes. As such, the money Tschetter sought in the Eviction Complaint was a debt under the plain language of the statute.

As a consequence, *Cook* does not require dismissal for lack of subject matter jurisdiction.

> **3.   Lastly here, Tschetter misstates the eviction proceedings—in addition to a writ of restitution seeking possession of the premises, the eviction action also sought an award of damages.**

Lastly, the Parties also appear to dispute the relevance of the claim for money damages in the Eviction Complaint. Tschetter contends that, "[w]hile the eviction complaint sought both possession and money damages, the complaint was not personally served on Plaintiff, therefore, only possession, not money damages could be obtained." (Def. Mot. 10.) That is, Tschetter seeks to benefit from its failure to obtain personal service on Warden, which negated its ability to obtain a money judgment, and have the Court act as if the claim seeking money damages was never included in the Eviction Complaint in the first place. Such sleight-of-hand should be rejected.

Courts that have considered whether an eviction action constitutes an attempt to collect a debt where both possession and money damages are sought have routinely held that evictions qualify as debt collection activity for the purposes of the FDCPA. *See O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 33 (D. Mass. 2014) ("A synthesis of the existing cases that address the question suggests that an eviction action can implicate the FDCPA, particularly where the eviction action includes some demand for payment tied to the property at issue"); *see also Lipscomb v. Raddatz Law Firm, P. L.L.C.*, 109 F. Supp. 3d 251, 260 (D.D.C. 2015) (disagreeing with *Cook* and

7

explaining that "the Court sees no basis for excluding Defendants' conduct from coverage because it involved attempts to regain possession of the rental properties. Whatever else they may have been seeking, they were clearly attempting to collect money that Plaintiffs allegedly owed.").

Applied here, Tschetter sought rent and possession.[5] Critically, C.R.S. § 13-40-115(2) does not require personal service of the demand for a landlord to *seek* a money judgment; rather, personal service is only required for the money claim to be tried. As such, it was by no means clear at any point that Tschetter wasn't actually seeking a money judgment or wouldn't request one from the Court based upon its failure to obtain personal service. Just the opposite is true: Tschetter included the claim in its Eviction Complaint and stated in the Stipulation both that it was dismissing the Complaint but also that claims for damages would be left unresolved.

And although the claim was eventually withdrawn, Tschetter did not voluntarily dismiss the money claim until ten days after being served with *this* lawsuit. (Def. Mot. 6). That Tschetter failed to obtain personal service is beside the point: at the time it committed the deceptive acts set forth in the Complaint, Tschetter was expressly seeking a money judgment in addition to possession. It shouldn't be allowed to moot the nature of the action it filed after-the-fact through a delayed dismissal. Particularly when viewed from the vantagepoint of the least sophisticated consumer, it certainly could appear that Tschetter sought an award of money damages together with possession at the time it made the false and deceptive representations/omissions to Warden— rendering inapposite Tschetter's citations to authorities that hold the FDCPA doesn't apply to evictions where only possession is sought.

---

[5] C.R.S. § 13-40-110(1) makes clear that landlords may seek a money judgment in a forcible entry and detainer action. ("The complaint may also set forth the amount of rent due, the rate at which it is accruing, the amount of damages due, and the rate at which they are accruing and may include a prayer for rent due or to become due, present and future damages, costs, and any other relief to which plaintiff is entitled.")

8

In sum, when viewed through the least sophisticated consumer standard, the Stipulation addressed more than solely the issue of possession and, during all times relevant, the Eviction Complaint sought money damages in addition to possession.

Because the Stipulation concerned more than the time period for a tenant to relinquish possession, because *Cook* is inapposite, and because the Eviction Complaint sought money damages in addition to a judgment for possession, the Stipulation plausibly arose in connection with the collection of a debt. As such, the Court should refuse to dismiss for a lack of subject matter jurisdiction.

### B.     Warden is a consumer under the FDCPA

As a residual argument, Tschetter asserts that Ms. Warden is not a consumer under the FDCPA. (Def. Mot. 11) ("Defendant's alleged actions do not qualify as a collection of a "debt"… Plaintiff is likewise not a "consumer" under the FDCPA"). In short, Tschetter argues that because a consumer is defined as "any natural person obligated or allegedly obligated to pay any debt," *see* 15 U.S.C.A. § 1692a(3), the fact there was supposedly no "debt" being collected in this case strips Warden of any consumer status. The Court should reject such arguments for the same reasons set forth above. The money damages sought in this case were debts allegedly owed by Warden that Tschetter was attempting to collect, notwithstanding its failure to obtain personal service. As such, the Court should refuse to dismiss on these grounds.

### C.     Warden pleads sufficient facts to survive a dismissal under Rule 12(b)(6).

For its Motion to Dismiss under Rule 12(b)(6), Tschetter claims that Warden hasn't pleaded specific facts to show violations of 1692(d), (e), (f), or (k). As set forth below, none of Tschetter's arguments warrant dismissal.

   1.     **Section 1692(d).**

9

Tschetter argues that dismissal of Plaintiff's claims under Section 1692(d) is appropriate because Warden supposedly hasn't alleged that Defendant's deceptive communications were in connection with any attempt to collect a debt. (Def. Mot. 12.) As set forth above, this is incorrect—particularly when viewed under the least sophisticated consumer standard, the Stipulation was a communication in connection with an attempt to collect the rent owed.

Defendant further asserts that no facts are pleaded to show conduct designed "to harass, oppress, or abuse." This is also inaccurate. The form Stipulation instills the mistaken belief in tenants that they will be able to occupy their homes longer by executing the Stipulation than they would receive if they, the tenants, contested the eviction action. This is because, among other things, Tschetter conceals from the to be-evicted tenants the fact that it takes additional time for successful landlords to secure eviction dates from the county Sheriff. (Compl., ¶ 13). Tschetter is aware that its form Stipulation deceives tenants. That is, Tschetter admits to it landlord clients that, "The tenant believes he is being given a few extra days to vacate the property, in actuality it usually takes longer than the few extra days to get a physical move-out date with the county Sheriff …". (*Id*., ¶ 14, Ex. 2 – Tschetter Eviction Procedures). Tschetter does not maintain a standard practice of checking with its clients after the date upon which a consumer tenant had committed to relocating pursuant to its form Stipulation to inquire as to whether the consumer tenant has relocated, or otherwise endeavor in good faith, if at all, to vacate judgments and dismiss actions asserted against consumer tenants who move out in accordance with the Stipulation. (*Id*., ¶ 22). Rather, Tschetter, unaware and uninterested in whether a consumer tenant has vacated their home in compliance with Tschetter's form Stipulation, routinely follows its standard operating procedure and requests a court issue a writ of restitution authorizing the Sheriff to eject consumer tenants who have already left their homes. (*Id*., ¶ 22). Tschetter's course of conduct in this regard interfered

10

with Warden's ability to obtain rental housing following the eviction and caused her mental distress and anguish. (*Id*., ¶¶ 46-48).

A reasonable finder of fact could conclude that all such conduct is oppressive and abusive, especially given the allegation that Tschetter knows its Stipulation misleads and confuses tenants and that it does not actually vacate any judgments of possession. At this stage, dismissal would be premature.

### 2. Section 1692(e)

Again, Tschetter seeks dismissal arguing there was no collection of any consumer debt and Tschetter is again mistaken for the reasons set forth above. Tschetter also asserts that the Complaint fails to set forth any conduct that is deceptive. This is untrue. The Complaint details how Tschetter knowingly misleads tenants into thinking they'll be able to remain in possession longer if they enter into the Stipulation when just the opposite is true. (Compl. ¶¶ 14-16.) The Complaint also sets forth that Tschetter does not follow up with tenants to determine if they've relinquished possession and that, instead, Tschetter routinely proceeds with the entry of the writ of restitution. (Compl. ¶¶ 17, 22, 41.) In short, the Complaint explains the deceptive conduct.

### 3. Section 1692(f)

In addition to asserting there was no attempt to collect any debt, Tschetter claims that the allegations that it acted in an unfair or unconscionable manner are conclusory. This is false. Again, Warden specifically pleads that Tschetter gives the false impression to tenants regarding the amount of time they'll have to remain in possession of their rentals in an effort to trick the tenants into vacating. Tschetter admits to its own landlord clients that it knows tenants are being mislead. Warden also pleads that Tschetter systematically fails to vacate judgments and dismiss actions as

11

called for in its Stipulation. This conduct interferes with a consumer tenant's ability to obtain housing in the future.

A reasonable finder of fact could find that this is unfair and unconscionable, rendering dismissal inappropriate at this point in the case.

### 4. Section 1692(k)

Finally, Tschetter argues that the allegations that its noncompliance with the FDCPA was intentional is conclusory. This is incorrect. Again, Warden pleads specific facts that explain how the Stipulation mislead Warden and others, that Tschetter knows tenants are given the false impression they will be able to stay in possession for a longer period of time if they execute the Stipulations, and that Tschetter touts the benefits of this misconduct to its landlord clients. When viewed under the least sophisticated consumer standard, it is plausible to conclude that Tschetter engaged in this misconduct intentionally.

## III. CONCLUSION

None of Tschetter's attacks prevails. The Court has subject matter jurisdiction to hear the case: Warden alleges that Tschetter acted deceptively in connection with the collection of a debt, the Stipulation didn't solely address the timing of possession, and Tschetter's Eviction Complaint against Warden unquestionably sought money damages. In a similar vein, Warden is a consumer under the FDCPA, and the Complaint sets forth sufficient facts to state claims for harassing, abusive, unfair, unconscionable, and deceptive conduct. As such, the Court should deny the Motion to Dismiss and award such additional relief as the Court deems necessary and just.

Dated: April 21, 2022                                By:   /s/ Steven L. Woodrow

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210

Jason Legg
CADIZ LAW, LLC
501 S. Cherry St., Ste. 1100
Denver, CO 80246
jason@cadizlawfirm.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on the 21st day of April 2022, a true copy of the above and foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system which will send notification to counsel referenced below.

John M. Palmeri
Tamara A. Seelman
GORDON REES SCULLY MANSUKHANI LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel: (303) 534-5160
*jpalmeri@grsm.com*
*tseelman@grsm.com*

  *Attorneys for Defendant*

           *s/ Jason Legg*
           Jason Legg
           One of Plaintiff's Attorneys