## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:          1:22-cv-00271-WJM-NRN

**SHAWNTE WARDEN**, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

**TSCHETTER SULZER, P.C.**, a Colorado professional corporation,

     Defendant.

---

## PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

---

Plaintiff Shawnte Warden ("Plaintiff" or "Warden"), by and through her attorneys, Woodrow & Peluso, LLC and Cadiz Law, LLC, hereby files her First Amended Class Action Complaint ("Complaint") against Defendant Tschetter Sulzer, P.C. ("Defendant" or "Tschetter"). Plaintiff, on behalf of herself and all others similarly situated, seeks a judgment of statutory damages in her favor and against Defendant for Tschetter's serial violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. Seq*. Specifically, through its form Stipulation of Judgment, Tschetter uses false representations, deceptive and misleading means, and unfair practices when it collects or attempts to collect debts allegedly owed by tenants like Warden. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.     At all times relevant for the purposes of this litigation, Plaintiff Shawnte Warden, is and has been a resident of the City and County of Denver, Colorado. Plaintiff is a consumer within the meaning of the FDCPA, 15 U.S.C. § 1692(a)(3), because she allegedly accrued overdue

rent for her primary residence, which is a debt for personal, family, or household purposes.

2.       Defendant Tschetter Sulzer, P.C. is a Colorado Professional Corporation with a principal place of business at 3600 S. Yosemite St., Ste. 828, Denver, CO 80237. Tschetter is a debt collector within the meaning of the FDCPA, 15 U.S.C. § 1692(a)(6). Among other reasons, it "uses an[] instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts", and it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

## JURISDICTION AND VENUE

3.       The Court has subject matter jurisdiction over the plaintiff's claim under 28 U.S.C. § 1331 *et seq*. because it raises a question under the FDCPA, a federal statute.

4.       Venue is proper in this court as the Defendant's conduct complained of herein was directed at the Plaintiff while she resided in the City and County of Denver, Colorado. Tschetter does business throughout the State of Colorado and is headquartered in this District.

## STATUTORY FRAMEWORK

5.       As an entity that regularly "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," Tschetter is a "debt collector" under theFair Debt Collections Practices Act, 15 U.S.C. § 1692a(6) ("FDCPA").

6.       As such, Tschetter may not employ false, deceptive, or misleading means or engage in unfair practices when collecting debts. *Id.* § 1692(e) & (f).

7.       The FDCPA is a strict liability statute, and litigants are required only to show that a single violation of a provision of the FDCPA occurred to be entitled to summary judgment. *See*

*O'Connor v. Check Rite, Ltd*., 973 F. Supp. 1010, 1020 (D. Colo. 1997).

## COMMON FACTUAL ALLEGATIONS

8.     Tschetter advertises and markets itself as "Colorado's Leading Landlord Advocacy Firm", that it is "#1 in Colorado Evictions", and that it has an "intimate understanding of the rental housing industry" and an "efficient approach to the eviction process … to process evictions quickly and effectively". Tschetter "guarantees … eviction cases are collection cases from day one." *See* **Exhibit 1** - Tschetter Website Screenshots**;** *see also* https://thslawfirm.com/.

9.     The Firm's practice concentrates on filing eviction lawsuits against thousands of tenants in Colorado each year for the alleged non-payment of rent due. Tschetter seeks judgments for possession and/or money, commonly referred to as "eviction-collection lawsuits", "eviction-collection cases", or "eviction-collection litigation" on behalf of its residential landlord and property manager clients.

10.     Tschetter routinely uses instrumentalities of interstate commerce, including the internet, phone, and mails to pursue its eviction-collection litigation.

11.     Tschetter includes the following language at the bottom of complaints in eviction-collection lawsuits the Firm files against consumer tenants: "This is a communication from a debt collector and this is an attempt to collect a debt. Any information obtained will be used for that purpose."

12.     The Firm also maintains a standard, uniform practice of attempting to mislead and deceive consumer tenants, nearly always without their own legal counsel, into signing its form "Stipulation" prior to the initial return date.

13.     Tschetter's form Stipulation misleads and deceives ordinary consumer tenants, and particularly consumers who are the least sophisticated. The form Stipulation instills the mistaken

belief in consumer tenants that the tenants will be able to occupy their homes longer by executing the Stipulation than they would receive if they, the tenants, contested the eviction action. This is because, among other things, Tschetter conceals from the to-be-evicted tenants the fact that it takes additional time for successful landlords to secure eviction dates from the county Sheriff.

14.     Tschetter is aware that its form Stipulation deceives tenants by, among other things, instilling in them the mistaken belief in consumer tenants in eviction-collection cases that its terms provide them with more time to vacate their homes than they would have if they contested the eviction in court and did not prevail. *See* **Exhibit 2** - Tschetter Eviction Procedures (Tschetter admits to it landlord clients that, "The tenant believes he is being given a few extra days to vacate the property, in actuality it usually takes longer than the few extra days to get a physical move-out date with the county Sheriff …")

15.     In fact, Tschetter acknowledges in its Eviction Flow Chart that it typically takes three to six weeks for a sheriff to execute a writ of restitution after a court enters judgment for a landlord and issues a writ of restitution—facts it routinely conceals from tenants. *See* **Exhibit 3** - Tschetter Eviction Flow Chart**,** notes 3-4.

16.     In other words, to avoid the three- to six-week period that generally follows from the date an order of possession is entered to the date the Sheriff actually evicts, Tschetter tricks tenants—through its form Stipulation—into foregoing that period by misleading the tenants into thinking they're securing more time to vacate than they would otherwise receive. Tschetter knows it creates this false impression in tenants and persists in deceiving tenants so as to evict tenants more quickly.

17.     Tschetter's Stipulation also misleads consumers into thinking that if they vacate, and thereby give up any leverage they may have had to negotiate more favorable terms for

themselves with respect to possession and/or discounts or reductions to any balances supposedly due on their account, that Tschetter will cause the judgment of possession to be vacated.

18.    Tschetter uses these confusing and deceptive terms and practices to enhance its debt collection activities. While the tenants surrender leverage as described above, Tschetter increases its leverage: deceptively expediting the entry of judgment for possession strengthens Tschetter's leverage in seeking to collect payment because consumer-tenants are faced with a certain eviction (since the judgment has already been entered) rather than the risk of eviction depending on the outcome of a hearing or trial.

19.    Secondly, at the stage in the eviction process when Tschetter presents consumer tenants with the form Stipulation, those tenants no longer had a *right* to cure the payment default by paying their rent[1]. Thus, Tschetter was able to leverage the judgment it obtained through the Stipulation to collect not only the payment of rent but also additional amounts such as late fees and attorney fees.

20.    In other words, the Stipulation does not merely relate to the issue of possession— it directly and specifically compliments and assists its collection of rental monies and other debts supposedly due from tenants.

21.    Tschetter acknowledges that the Stipulation compliments and assists its debt collection efforts in its form "Advisement" that it presents to consumer tenants, including Ms. Warden, for them to receive the Stipulation. Specifically, it includes the following text:

---

[1] Colorado's eviction statutes were amended effective October 1, 2021, to extend the cure period for nonpayment of rent to any time prior to the issuance of a judgment for possession. C.R.S. § 13-40-115(4). Prior to that date, a tenant's right to cure a default by paying the past due rent expired before an eviction case could be filed.

In short, you have 10-Days to either work it out with your landlord or move-out. If you are being evicted for rent, working it out almost always means paying the rent and other sums you owe or arriving at an agreement with the landlord to pay these amounts. Please note the following about resolving past due rent amounts. At this point in the legal process, the landlord does not have to accept the rent even if you offer the full amount due. However, if it is about the rent and nothing else, nearly all landlords will accept amounts due from you if you offer to pay in certified funds the full amount due. Landlords would much rather have a paying tenant than an empty property. But if there is more going on than past due rent (examples: you have loud parties, you fight with other tenants, or you and the landlord don't get along), a landlord may decide to exercise their right to end the relationship by not accepting your money. You should also be aware that most landlords will not accept less than the full amount due and owing, including rent, unpaid utilities, late fees, and attorneys' fees. Finally, most landlords are not going to give you an extended period of time to pay. They may agree to give you some extra days but not weeks and certainly not months to pay. Please keep in mind that by the time you have arrived at this point, you already have had an extended time to pay. In most cases well over a month after you initially didn't pay your rent.

*See* **Exhibit 4** – Advisement ("Please note the following about resolving past due rent amounts. At this point in the legal process, the landlord does not have to accept the rent even if you offer the full amount due. However, if it is about rent and nothing else, nearly all landlords will accept amounts due from you if you offer to pay in certified funds the full amount due. Landlords would much rather have a paying tenant than an empty property…You should also be aware that most landlords will not accept less than the full amount due and owing, including rent, unpaid utilities, late fees, and attorneys' fees…").

22.      Adding insult to injury, Tschetter's form Stipulation also provides that "If Defendant(s) surrender possession of the premises and return all keys to Plaintiff (Landlord) before the date above, Plaintiff will move the Court to vacate the judgment for possession and Dismiss this action without prejudice." *See* **Exhibit 5** - Stipulation.

23.      Tschetter's Advisement emphasizes that all a consumer tenant must do in order to trigger Tschetter's obligation to vacate the stipulated judgment for possession and to dismiss the money claim is vacate the subject premises by the date specified in the Stipulation:

4. If you can't work it out with the landlord but you move-out of the property prior to the move-out date in the Stipulation as you agreed to, the Landlord promises to vacate the judgment for possession in your case and dismiss the eviction case. This means that if you move out prior to the move-out date in the Stipulation, you will not have a judgment for possession on your record with the Court…Finally, remember by moving-out prior to the agreed upon move-out date in the Stipulation

triggers our obligation to vacate any possession judgment and dismiss your case…Thus, by signing and complying with a Stipulation, you are *guaranteed* not to have an eviction judgment (judgment for possession) on record with the Court.

*See* **Ex. 4** (emphasis added). Tschetter clearly represents to consumers that "moving-out prior to the agreed upon move-out date in the Stipulation triggers our obligation to vacate any possession judgment and dismiss your case."

24.     Tschetter does not require its landlord clients to sign the form Stipulation.

25.     The form Stipulation does not include a signature line for Tschetter's clients. See **Ex. 5**.

26.     On information and belief, Tschetter is authorized to enter into and accept judgment stipulations on its clients' behalf that are in accordance with its form Stipulation.

27.     Tschetter, as agent for its clients, routinely fails to vacate judgments and dismiss actions as it promises consumer tenants who move out in accordance with the Stipulation.

28.     On information and belief, Tschetter does not maintain a standard practice of checking with its clients after the date upon which a consumer tenant had committed to relocating pursuant to its form Stipulation to inquire as to whether the consumer tenant has relocated, or otherwise endeavor in good faith, if at all, to vacate judgments and dismiss actions against consumer tenants who move out in accordance with the Stipulation.

29.     On information and belief, Tschetter, unaware and uninterested in whether a consumer tenant has vacated their home in compliance with Tschetter's form Stipulation, routinely follows its standard operating procedure and requests a court issue a writ of restitution authorizing the Sheriff to eject consumer tenants who have already left their homes. Rather, Tschetter ignores its representation to consumers that "moving-out prior to the agreed upon move-out date in the Stipulation triggers our obligation to vacate any possession judgment and dismiss your case" and

acts as if, instead, only a request by the tenant to have the judgment vacated triggers its obligation.

30.    Upon information and belief, Tschetter presents its form Stipulation to consumer tenants on a take-it-or-leave-it basis.

31.    On information and belief, Tschetter presents its form Stipulation to consumer tenants via a medium that does not allow consumer tenants to make edits or propose changes to the terms of the document. There are no negotiations or edits, and tenants may only add their e-signatures—nothing more.

32.    Tschetter attempted to collect debts or purported debts from the Plaintiff using the mails or other means of interstate commerce.

## FACTS SPECIFIC TO PLAINTIFF WARDEN

33.    Plaintiff Warden leased an apartment in 2019 at the Mint Urban Infinity Apartment complex from Glendale Properties I, LLC in Denver, Colorado, where she resided until February 4, 2021.

34.    Ms. Warden emailed a message to Glendale Properties I, LLC on January 6, 2021, stating, in pertinent part, "Sorry, I have COVID and haven't been able to leave my apartment since Im [sic] on quarantine."

35.    On January 22, 2021, Tschetter filed an eviction lawsuit/collection proceeding against Warden on behalf of her landlord, Glendale Properties I, LLC, asserting claims for both unlawful detainer and a money claim for allegedly past due rent and other amounts.

36.    The eviction lawsuit/collection proceeding that Tschetter filed against Warden was scheduled for an initial return date with the Denver County Court on February 2, 2021.

37.    On or around January 26, 2021, Tschetter caused the pleadings to be mailed to Warden pursuant to C.R.S. § 13-40-112(2).

38.     On January 25, 2021, Tschetter's client, Glendale Properties I, LLC emailed Ms. Warden the following message:

> "Hello Shawnte,
>
> Your court date for apartment home 11-406 is scheduled for 02/01/2021.
> At this point, you are welcome to submit payment in full for November 2020 through January 2021 rent prior to your court date and we will be able to have the case dismissed.
>
> As of today, your total amount due is $3,949.36.
>
> Please let me know if you have any questions and when you plan on submitting payment in full. Thanks and look forward to hearing from you!
>
> Our mailing address is:
> Mint Urban Infinity I
> 1251 S BELLAIRE ST
> Denver, CO 80246"

39.     On January 26, 2021, Ms. Warden again emailed her landlord stating, in part, "I'm actually going to move out. With losing my job and struggling to find another thing with COVID. I'm still waiting for emergency housing assistance through the state, which I thought would have gone through by this point…"

40.     Warden received the pleadings in the mail on or around January 31, 2021.

41.     On information and belief, the pleadings in the eviction collection litigation that Tschetter mailed to Warden also included a copy of Tschetter's form Settlement Solicitation. *See* **Exhibit 6** - Settlement Solicitation.

42.     On January 31, 2021, Warden followed the instructions in Tschetter's Settlement Solicitation by visiting Tschetter's website and verifying her identity.

43.     On January 31, 2021 at 5:31 pm Warden received an email from Tschetter via its are@thslawfirm.com email address after verifying her identity. The email from Tschetter contained the subject line "454333 – Stipulation" and the body of the email stated, "Thank you for

verifying your record. You can learn more about stipulations and electronically submit one at the following link: https://forms.thslawfirm.com/stipulation-454333-2680".

44.    Tschetter, through its website, presented Ms. Warden with its form Stipulation for electronic signature at 5:35 pm. *See* **Ex. 5**, 3.

45.    On information and belief, on or around when Tschetter presented Ms. Warden with its form Stipulation it also presented her with its form Advisement.

46.    Confused by its terms, and believing that the Stipulation would provide her with additional time to stay in her rental unit and that any judgment would be vacated and that the money claim asserted against her would be dismissed upon her decision to leave the property, Warden electronically signed Tschetter's form Stipulation at 5:36 pm on January 31, 2021—5 minutes after she received the 454333- Stipulation emails advising her to visit Tschetter's website. *Id*.

47.    Tschetter's electronic platform, through which the Stipulation was presented to Ms. Warden, known as the Pegasus Legal Platform, did not allow Ms. Warden to make or propose changes to the terms of the Stipulation.

48.    Tschetter's stipulation gave Warden and other tenants the false impression that it provided her (and them) with more time to relocate from her home than she would have had if the Court were to rule against her in the eviction collection case. It also led her to believe that it if she moved out of her home and surrendered her keys before February 11, 2021, Tschetter would move the Denver County Court to vacate the judgment for possession entered against her and dismiss the eviction collection lawsuit without prejudice.

49.    Ms. Warden vacated her home and returned her keys to Glendale Properties I, LLC on February 4, 2021.

50.     On February 4, 2021, at 5:15 p.m., Glendale Properties I, LLC emailed Ms. Warden, "Hello Shawnte, This is written confirmation that the court case has been dismissed. Thank you!"

51.     Despite this email, Tschetter did not move the Denver District Court to vacate the judgment for possession entered against Warden or to dismiss the eviction collection action without prejudice prior to the commencement of this lawsuit on January 31, 2022. *See* **Exhibit 7** – Eviction Collection Case E-Filing History.

52.     Rather, Tschetter filed a proposed "Writ of Restitution" with the Court on February 15, 2021, asking the Court to issue the writ, which the Court issued on February 18, 2021. *Id.*; *see also* **Exhibit 8** – Proposed Writ of Restitution.

53.     In August of 2021, after vacating her home at the Mint Urban Infinity Apartment complex and well after the eviction collection action Tschetter filed against her should have been dismissed with the judgment vacated, Ms. Warden's rental application was denied by another Colorado housing provider based on the results of its tenant screening and background check.

54.     On information and belief, the housing provider who denied Ms. Warden's rental application in August of 2021 used a tenant screening service that considered at least in part the eviction collection case filed against her by Tschetter and was able to obtain that information because the case, including the judgment for possession and writ of restitution, remained active, of record, and had not been dismissed, vacated, or suppressed at the time Plaintiff's initial Complaint was first filed in this case.

55.     Defendant's actions caused Ms. Warden mental distress and anguish.

## CLASS ACTION ALLEGATIONS

56.     Warden brings this action in accordance with Rule 23(b)(3) of the Federal Rules

of Civil Procedure and seeks certification of the following class:

> **Class Definition**: All present and former Tenants: (1) of residential rental properties located in Colorado, (2) whose landlords or property managers engaged Tschetter to facilitate allegedly overdue rent collection through the initiation of eviction collection lawsuits, (3) where Tschetter presented a consumer tenant with its form Stipulation.

57.     Plaintiff anticipates the need to amend the Class Definition following appropriate discovery regarding the size and contours of the alleged class.

58.     <u>Numerosity</u>: On information and belief, the number of individuals in the class exceeds 100 persons. Class membership may be ascertained through reference to objective criteria that includes Tschetter's business and eviction records.

59.     <u>Commonality and Predominance</u>: There are questions of law and fact common to the class that will drive the litigation, including:

     a.     Whether Defendant is a debt collector under the FDCPA;

     b.     Whether Defendant used false, deceptive, or misleading representations in connection with collection of a debt through its use of its form Stipulation;

     c.     Whether Defendant's false representations and deceptive conduct should be viewed through the lens of the least sophisticated consumer;

     d.     Whether Defendant used unfair or unconscionable means to collect or attempt to collect a debt through its use of its form Stipulation;

     e.     Whether Plaintiff and the other tenants are entitled to statutory damages for Defendant's misleading, deceptive, and/or unfair conduct;

     f.     Such other common questions to be revealed through discovery and trial.

60.     The claims of the named Plaintiff are typical of the claims of the class because she has the same interests—if Defendant's form Stipulation violated the FDCPA with respect to Plaintiff then it violated the FDCPA with respect to the other members of the class.

61.     Plaintiff and her counsel will fairly and adequately represent the interests of the class. Plaintiff will vigorously pursue these claims. There are no known conflicts of interest between Plaintiff and members of the class, and Plaintiff is represented by attorneys who are experienced in consumer class actions, including class actions alleging violations of consumer statutes and landlord tenant matters.

62.     Questions of law and fact common to class members predominate over any questions affecting only individuals. A class action is superior and manageable. There is no current litigation of individual claims under the FDCPA pending against Defendant in any forum. Individual recoveries are too low to incentivize such litigation. A class action therefore will allow the claims to be efficiently adjudicated in a single forum promoting uniformity of judgments and judicial economy.

**FIRST CAUSE OF ACTION**
**Violation of the FDCPA on behalf of the Class against**
**Defendant Tschetter**

63.     The allegations set forth above are realleged and incorporated as if set forth fully herein.

64.     At all times relevant to this action, Tschetter was a debt collector within the meaning of the FDCPA, 15 U.S.C. § 1692(a)(6). It engaged in a business through which it regularly collected and attempted to collect debts using the instrumentalities of interstate commerce, and its principal purpose was to collect debts, owed or due to another which were already in default.

65.     Shawnte Warden and all class members are consumers within the meaning of the

FDCPA, 15 U.S.C. § 1692(a)(3), because the alleged overdue rent were debts incurred for personal, family, or household purposes.

66.     Tschetter's form Stipulation described above was deceptive in violation of the FDCPA, 15 U.S.C. § 1692(e), (e)(5), and (e)(10).

67.     Tschetter's form Stipulation described above was unfair and/or unconscionable for the purposes of the FDCPA, 15 U.S.C. § 1692(f), and (f)(1).

68.     Tschetter's form Stipulation related to the collection of debt and not "merely" to the issue of possession.

69.     Tschetter's form Stipulation was deceptive and unfair to the least sophisticated consumer.

70.     Defendant's noncompliance with the FDCPA was intentional within the meaning of 15 U.S.C. § 1692k, as Defendant intended to and did in fact draft and send the defective, unfair, and unconscionable Stipulation and presented it to Plaintiff and the class members knowing that it was deceptive because, among other things, it: (1) mislead tenants into thinking they obtained additional time to occupy their rental units by signing the Stipulation when in fact they did not and (2) falsely represented that by signing the form Stipulation the tenant would have the judgment vacated and the case dismissed.

71.     Defendant violated the FDCPA, 15 U.S.C. § 1692d, §1692(e), (e)(2)(A) and (B), (3), and (10), and 1692(f), (f)(1), causing actual injuries to Plaintiff, as well as the entire class, thus making Tschetter liable to them in damages.  These damages include, but are not limited to, statutory damages, increased stress andmental anguish, increased confusion, housing insecurity, and loss of validation and dispute rights.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully request that this Court enter an Order of judgment:

72.     Certifying the plaintiff class pursuant to F.R.C.P. 23(a) and (b)(3), appointing Plaintiff as the Class Representative and her lawyers as Class Counsel;

73.     Granting an award of damages to Plaintiff and the Class pursuant to 15 U.S.C. § 1692k, including statutory damages in the amount of $1,000 per named plaintiff, the lesser of $500,000 or 1% of the net worth of the Defendant, the costs of the action, and reasonable attorneys' fees, all to be paid into a common fund for the benefit of the Class, and

74.     Awarding such other and further relief as this Court deems necessary, adequate and just.

 Respectfully submitted this 7th day of June 2022,


By:   /s/ Steven L. Woodrow
One of her attorneys
Steven L. Woodrow
swoodrow@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210

By:  /s/ Jason Legg
Jason Legg (#42946)
CADIZ LAW, LLC
501 S. Cherry St., Ste. 1100
Denver, CO 80246
jason@cadizlawfirm.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 7th day of June 2022, a true copy of the above and foregoing was electronically served to counsel referenced below.

John M. Palmeri
Tamara A. Seelman
GORDON REES SCULLY MANSUKHANI LLP
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel: (303) 534-5160
*jpalmeri@grsm.com*
*tseelman@grsm.com*

*Attorneys for Defendant*

s/ Jason Legg
Jason Legg
One of Plaintiff's Attorneys