IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:22-cv-0271-CNS-NRN

**SHAWNTE WARDEN**, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

**TSCHETTER SULZER, P.C.**, a Colorado professional corporation,

        Defendant.

---

**PLAINTIFF WARDEN'S UNOPPOSED MOTION AND MEMORANDUM
OF LAW IN SUPPORT OF PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

---

Plaintiff Shawnte Warden ("Plaintiff" or "Warden"), individually and on behalf of a class of similarly-situated individuals, respectfully moves the Court, in accordance with Federal Rule of Civil Procedure 23, for an Order granting preliminary approval of the proposed class action Settlement Agreement agreed to by the Parties and, in support, states as follows:

**CERTIFICATE OF CONFERRAL**

Plaintiff's counsel conferred with Defendant's counsel regarding this motion. Defendant does not oppose the relief sought. Defendant, however, denies it engaged in any unlawful conduct. Defendant's consent to the relief sought in this motion should not be construed as consent to Plaintiff's position set forth herein that Defendant did engage in wrongful conduct.

1.    Plaintiff has brought this alleged class action lawsuit against Defendant Tschetter Sulzer, P.C. ("Defendant" or "Tschetter") challenging certain debt collection practices that Plaintiff alleges Defendant engaged in in violation of the Fair Debt Collections Practices Act

("FDCPA" or "Act"), 15 U.S.C. § 1692, *et seq*.

2. Warden alleges that Tschetter violated the FDCPA by providing tenants who owe a debt to their landlords with form authorizations (the "Authorization") and stipulations (the "Stipulation") that Plaintiff alleges were deceptive.

4. Tschetter denies all claims asserted against it in this action, denies all allegations of wrongdoing and liability, and has raised other defenses to class certification and the merits.

5. Notwithstanding their disagreements, the Parties, following a full day mediation session overseen by the Honorable Ann B. Frick (ret.) of the Judicial Arbiter Group, Inc. ("JAG") in Denver, Colorado, have entered into a Settlement Agreement, subject to Court approval, that provides the following relief:

(i) certification of a Settlement Class for settlement purposes only defined as "all Tenants who signed the Stipulation between January 31, 2021, and February 28, 2022 and for whom any Judgment of Possession has not yet been vacated." (Settlement Agrmt. at § II.27.) The Parties understand the Settlement Class to consist of approximately 249 individuals.

(ii) the establishment of a settlement fund of no less than sixty thousand dollars ($60,000.00 USD) for the payment of all Settlement Class Members who do not opt out. In the event that the Settlement Class exceeds 249 individuals, Defendant will increase the amount of the settlement fund so as to ensure that there are sufficient funds for each Class Member to receive a settlement payment in the amount of $240;

(iii) an agreement from Tschetter that it will seek to have judgments for possession that were entered against class members vacated upon obtaining approval to do so from each class member tenant's respective landlord or where the landlord does not timely raise an objection to vacating the judgment based on the tenants failure to vacate;

    (iv) revisions to Defendant's form Advisement and Stipulation, subject to approval by Class Counsel. The Mediator has reviewed the suggested revisions and believes they are appropriate;

    (v) payment by Tschetter of any notice and settlement administration expenses;

    (vi) payment of a Class Member incentive award, subject to Court approval, of $10,000; and

    (vii) payment of any award of reasonable attorneys' fees and reimbursement of expenses, subject to the approval of the Court, not to exceed $150,000.

*See* "Settlement Agreement", a true and accurate copy of which is attached as Ex. A.

  6. As set forth more fully in the Memorandum of Law below, the Settlement terms are demonstrably fair, reasonable, and adequate and fall well-within the range of final approval. The terms provide significant relief to the Class Members—including cash payments and the vacation of judgments from the court records—without the continued risks and costs attendant to protracted litigation.

  7. Such relief compares favorably to other alleged FDCPA class actions that have been approved by courts across the Country.

  8. The strength of the Settlement is little surprise given the process used to achieve it. Proposed Settlement Class Counsel engaged in negotiations after having obtained information necessary to fairly evaluate the merits and strengths of Plaintiff and the other Settlement Class Members' claims. The Parties then engaged in a full-day mediation session with a well-respected and experienced neutral who helped facilitate arm's-length discussions. The end result is a Settlement that is fair, reasonable, and adequate for the Settlement Class Members.

  WHEREFORE, and as set forth in the accompanying Memorandum of Law, Plaintiff

Warden, on behalf of herself and the proposed Settlement Class, seeks an Order granting Preliminary Approval of the Settlement, directing that Notice be disseminated to the Settlement Class as set forth the Settlement, and setting dates for Settlement Class Members to object or request to be excluded, for the submission of papers in support of Final Approval, and for a Final Approval Hearing, and for such additional relief as the Court deems necessary and just.

Dated: November __, 2023

Respectfully submitted,

SHAWNTE WARDEN, individually
and on behalf of all others similarly situated,


By: /s/

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Jason Legg (#42946)
CADIZ LAW, LLC
501 S. Cherry St., Suite 1100
Denver, CO 80246
jason@cadizlawfirm.com

*Counsel for Plaintiff*

Case No. 1:22-cv-00271-CNS-NRN   Document 77   filed 12/01/23   USDC Colorado
pg 5 of 19

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

**I.    Introduction**

This case concerns Defendant's use of a form Authorization and Stipulation that Plaintiff alleged was misleading in violation of the FDCPA. The matter has been heavily litigated for nearly two years, including multiple motions to dismiss, a motion for reconsideration, extensive written and oral discovery, and a formal mediation session.

Not only was the mediation session successful in bringing the Parties together to discuss their respective claims and defenses—the Parties reached a settlement to resolve the claims at issue and provide relief to Warden and the Settlement Class. The result is a strong Settlement ("Settlement Agreement" or "Settlement," attached hereto as Exhibit A) that fairly, reasonably, and adequately compensates the Settlement Class Members.

The underlying settlement agreement is undeniably admirable. In addition to requiring Tschetter to take measures to revise its Advisement and Stipulation forms and to vacate judgments against Class Members, the Agreement creates a Settlement Fund totaling no less than $60,000 from which Class Members will receive cash compensation. The process is straightforward. All Class Members who are on the Class List and who do not opt out of the settlement will be sent a check for $240. The Settlement Agreement further provides that Defendant will pay for all settlement administration costs, as well as any incentive award to the Class Representative and Fee Award to Settlement Class Counsel as approved by the Court. The Agreement provides for notice to Class Members of the Settlement and their rights to be excluded from or object to the Agreement as well as procedures for requesting to opt out so as not to be bound.

The results achieved by the Settlement—which compare favorably to FDCPA settlements that have received final approval by courts around the country—demonstrate the propriety of

granting preliminary approval. As such, Warden respectfully moves the Court for an Order: (1) granting preliminarily approval to the Settlement Agreement, and (2) ordering that Notice be disseminated to the Settlement Class in accordance with the Settlement Agreement.

## II.     The FDCPA

The FDCPA makes it unlawful for debt collectors to employ false, deceptive, or misleading means or engage in unfair practices when collecting debts. 15 U.S.C. § 1692e, 1692f. An entity that "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" is considered a "debt collector" subject to the requirements of the FDCPA. *Id.* § 1692a(6). The FDCPA is a strict liability statute, and litigants are only required to show that a single violation of a provision of the FDCPA occurred to be entitled to summary judgment. *See O'Connor v. Check Rite, Ltd.*, 973 F. Supp. 1010, 1020 (D. Colo. 1997).

## III.    Summary of the Plaintiff's Claims, Litigation, and Settlement Process.

Following significant discovery regarding the scope of the case, the Parties engaged in a full-day mediation with respected mediator, Hon. Ann B. Frick (Ret.) of Judicial Arbiter Group, Inc. The result of the efforts of the Parties' counsel and the mediator is a favorable deal that reflects fair, reasonable, and adequate relief for the Settlement Class.

### A.      The Plaintiff's Claims and The Litigation History.

This case was filed on January 31, 2022. (Dkt. 1.) Tschetter is a Colorado law firm that advertises itself as a "landlord advocacy firm," with extensive experience in the handling of residential evictions. Plaintiff was a tenant in the Mint Urban Infinity Apartment complex in

Glendale, Colorado, from 2019 until early 2021, at which point she fell behind on her rent payments and eventually intended to move out of her home.

Defendant filed an eviction lawsuit and collection proceeding against Warden on behalf of her landlord on January 22, 2021, and on January 31, 2021, Tschetter provided Plaintiff with a link to its form Stipulation and Advisement hosted on its website. Allegedly confused by its terms, Warden claims she believed the Stipulation would provide her with additional time to stay in the unit and that any judgment against her would be vacated. She signed the form, vacated the unit, and received confirmation from her landlord that the court case was dismissed. However, Tschetter did not move to vacate judgment, instead filing a proposed Writ of Restitution, and Plaintiff alleges she was subsequently denied housing when a tenant screening revealed that the outstanding eviction judgment had not been dismissed.

On March 17, 2022, Defendant filed a motion to dismiss for lack of jurisdiction, and on June 2, 2022, the Court granted Plaintiff leave to amend her complaint, denying the motion to dismiss without prejudice. (Dkts. 17, 39.) Warden filed an amended complaint on June 7, 2022, and Defendant again moved to dismiss on June 21, 2022. (Dkts. 40, 41.) The Parties fully briefed the second motion to dismiss, and the Court ultimately denied the motion on December 5, 2022. (Dkt. 51.) Tschetter thereafter filed a motion for reconsideration, which the Court, following complete briefing, denied on March 15, 2023. (Dkts. 52, 61.)

The Parties thereafter engaged in significant discovery related to the size and scope of the alleged Class as well as Tschetter's forms, policies, and practices. Equipped with sufficient information to negotiate, on September 18, 2023, the Parties attended a full-day mediation session with the Honorable Ann B. Frick (Ret.) (the "Mediator") of Judicial Arbiter Group, Inc., in Denver,

Colorado. Their efforts were successful, and the Parties reached an agreement to settle the claims at issue and provide relief to Plaintiff the Settlement Class.

As such, and as set forth below, the Parties' efforts and negotiations have produced settlement terms that fall within the range of terms that should ultimately be considered as fair, reasonable, and adequate on final approval.

## IV.  Key Terms of the Settlement

The complete terms of the Settlement are set forth in the Settlement Agreement. (Ex. A.) A brief summary follows.

### A.  Class Definition

The "Settlement Class" or "Class" is defined as "all Tenants who signed the Stipulation between January 31, 2021, and February 28, 2022, and for whom any Judgment of Possession has not yet been vacated." (Settlement Agrmt. at § II.27.) The Parties understand the Settlement Class to consist of approximately 249 individuals.

### B.  Monetary Relief

Tschetter must establish a Settlement Fund of no less than $60,000, (*Id.* at § II.31), which will be used to pay all class members who do not opt out approximately $240 each, and any additional class members identified will increase the settlement fund by $240. The Agreement further provides that, separate from the Settlement Fund (and so as not to diminish the Settlement Fund) Tschetter must pay any Incentive Award and reasonable Fee Award as approved by the Court, up to $10,000 and $150,000, respectively. Tschetter must also bear all costs of Settlement Administration and Notice. Any amounts remaining in the Settlement Fund after payment of all Settlement Class Members, and after at least one attempt at re-mailing, will be paid to a *cy pres* recipient approved by the Court.

### C. Prospective Relief

In addition to the $60,000 in cash relief, the Settlement Agreement also requires that Tschetter adopt the following prospective measures: (1) Tschetter is required to vacate judgments against class members where no objection is raised or where landlord or management companies fail to respond within 14 days of a letter notifying them of the intent to seek to have the judgment vacated; and (2) Tschetter must revise its Advisement and Stipulation forms, subject to approval by Class Counsel. The Mediator has reviewed the suggested revisions and believes they are appropriate. (Settlement Agrmt. § III.5.) Hence, the Settlement not only compensates Settlement Class Members for Tschetter's alleged violations of the Act, it seeks to ensure that Settlement Class Members avoid future harms related to pending collections actions and that tenants in the future will be presented with Advisement and Stipulation forms that comply with the FDCPA.

### D. Release of Liability

In exchange for the benefits to the Class, Tschetter will receive a full release of any claims relating to Tschetter's use of the subject Advisement and Stipulation forms made under the FDCPA or any similar state statute or law. (Settlement Agrmt. § V.) The Release includes unknown claims, which are limited to claims that could have been brought in the litigation.

### E. Notice

The Settlement also calls for the dissemination of notice to Class Members. This includes a comprehensive plan that features direct mail and email notice and an attempt to re-mail notices to forwarding addresses when any such notice is returned as undeliverable. The Notices will explain the key terms of the Settlement, the rights of Settlement Class Members to request exclusion, and instructions as to the method to submit a valid opt-out request. The proposed notice documents are attached as Exhibit B to this motion. Defendant is responsible for ensuring the

Notice is timely mailed to the Settlement Class Members and for processing any objections or exclusion requests by promptly forwarding them to Settlement Class Counsel and the Court.

Such terms are decidedly favorable to the Settlement Class, and the Court should grant preliminary approval.

## V. The Proposed Settlement Class Should Be Approved.

Approval of a class action settlement is performed in two steps: (1) preliminary approval, where the court, before notice is disseminated, evaluates whether the terms fall within the range of final approval such that notice to the Class is appropriate, and (2) final approval, following notice and the opportunity for settlement class members to opt out, object, or speak in favor of the settlement, where the court determines whether the terms are fair, reasonable, and adequate.

Here on preliminary approval, the first step for is to certify the proposed settlement class for settlement purposes. The Parties have agreed, solely for the purposes of this Settlement, to define the Settlement Class as follows:

> [A]ll Tenants who signed the Stipulation between January 31, 2021 and February 28, 2022 and for whom any Judgment of Possession has not yet been vacated.

(Settlement Agrmt. at § II.27.) As of the time of this filing, the Parties understand the class to include 249 individuals, and to the extent any additional class members are discovered, the Agreement provides that the Settlement Fund will increase by $240 for any additional class members. (*Id.* § II.31.) Under the settlement, only persons who appear on the Class List will receive notice of the settlement and have an opportunity to opt out, but they also are the only persons who will be releasing claims against Tschetter. Thus, there is no prejudice to anyone not appearing on the Class List to limit the Settlement Class to those on the List.

The Court should therefore, for the purposes of settlement, certify the Settlement Class of 249 individuals as defined in the Agreement.

## VI. The Proposed Settlement Falls Well Within the Range of Terms That are Fundamentally Fair, Reasonable, and Adequate, and Thus Warrants Preliminary Approval.

The Court may approve a class settlement only "on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *see also* A. Conte & H.B. Newberg, NEWBERG ON CLASS ACTIONS, §11.25, 3839 (4th ed. 2002). The approval process includes three steps: "(1) the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001). Judicial policy favors the voluntary conciliation and settlement of complex class actions. *In re Telectronics,* 137 F. Supp. 2d 985, 1008–09 (S.D. Ohio 2001).

Regarding the first step, a preliminary hearing enables the court to determine whether a proposed settlement is "within the range of possible approval." Newberg, §11.25, at 3839 (quoting Manual for Complex Litigation §30.41 (3d ed. 1995)); *see also In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010) (citation omitted). The Court must "ensur[e] that the proposed settlement is not illegal or collusive" based upon the "issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (citation omitted).[1] Preliminary approval only requires "initial evaluation" of the fairness of the settlement,

---

[1] When "determining whether preliminary approval is appropriate, the Court should evaluate . . . whether the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *In re Polyurethane Foam Antitrust Litig.*, 2012 WL 12868246, at *4 (N.D. Ohio Jan. 23, 2012).

which is based on written submissions and informal presentations from the settling parties. Manual for Complex Litigation § 21.632 (4th ed. 2004).

In analyzing whether a settlement is fair, reasonable, and adequate, courts typically consider the same list of factors applicable to the final approval analysis: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *In re: Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1116 (10th Cir. 2017) (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)).

As explained below, each factor weighs in favor of approval of the Settlement.

### A. There is no risk of fraud or collusion—the instant Settlement was reached through fair and honest negotiation.

The first factor—fair and honest negotiation—weighs in favor of granting preliminary approval. To protect absent class members, courts reviewing proposed class action settlements must ward against possible collusion. In general, "'[c]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.'" *Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F.Supp.2d 521, 531 (E.D. Ky. 2010) (citation omitted). Further, negotiations that are overseen by third-party mediators are generally considered to be non-collusive. *See Bert v. AK Steel Corp.,* 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *see also Satchell v. Fed. Express Corp.,* 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator . . . confirms that the settlement is non-collusive.").

This case was mediated with the Honorable Ann B. Frick (ret.) of Judicial Arbiter Group, Inc., a respected mediator in Denver. It was with Judge Frick's guidance and assistance that the Parties able to reach the agreement that they did, which provides considerable relief to the Class Members in exchange for a class-wide release of the claims brought against Tschetter. The Settlement achieved by the Parties is a result free of collusion—the negotiations always stayed at arm's length, and the lack of collusion or fraud here supports granting preliminary approval.

    **B.**    **Questions of law and fact exist in the case support approving a favorable settlement now.**

The second and third factors, which inquire into the complexity and likely duration of the litigation and the value of immediate recovery weighed against the mere possibility of future relief, also supports approval. This analysis balances the "risk of continued litigation . . . against the certainty and immediacy of recovery from the Settlement." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). When considering the immediate recovery provided by a fair settlement, as opposed to the uncertainty of continued litigation, "it has been held proper to take the bird in hand instead of a prospective flock in the bush." *Kim v. Space Pencil, Inc.*, No. 11-CV-03796, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) (quoting *Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005)). In this case, given that several hurdles remain (including the need to move for and obtain class certification and survive any subsequent motions for summary judgment, trial, and appeal, this factor weighs in favor of approval of the settlement. *See Garner*, 2010 WL 1687832, at *10 (citing *Rodriguez*, 563 F.3d at 966).

The expense, duration, and complexity of continued litigation certain to occur in the absence of this Settlement would be considerable, and time and expenses would be expended on both sides to brief motions related to class certification and summary judgment. Exacerbating the

inherent risk of pursuing and litigating the merits of any case is the unavoidable risk attendant to seeking adversarial class certification, as well as maintaining class status through the remainder of the action. Not only would Plaintiff need to move for and obtain class certification, but she may also be faced with efforts and motions practice by Defendant to decertify—this is especially true given that "[a] district court may decertify a class at any time." *Rodriguez*, 563 F.3d at 966 (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982)).

In addition to motions practice, significant labor and expenses would be required of both parties in preparation for trial, including the expenses involved in the preparation and calling of witnesses and experts. *See Young v. Polo Retail, LLC*, 02-CV-4546, 2007 WL 951821, at *3 (N.D. Cal. Mar. 28, 2007). Likewise, the uncertainty of outcome presents risk for both parties, and given the potential for a statutory award, the losing party would likely appeal the decision as a matter of course, resulting in the expenditure of even more time and money.

Given the expense and risk involved in continued litigation, this factor weighs in favor of approval. The Parties have agreed to a Settlement that provides substantial monetary relief to the class members, as well as prospective relief—neither of which would be guaranteed in the absence of Settlement or even if Plaintiff was successful at trial. As such, for all of the reasons discussed above, the Court should find the decision to settle at this stage a reasonable one and supportive of the fairness of the Settlement.

**C.     The judgment of the Parties supports approval**

As to the fourth factor, the judgment of both Parties—who achieved the settlement with assistance from a mediator—also supports approval. When considering this factor, proposed Class Counsel's "weighing of the relative risks and benefits of protracted litigation" is to be given "great deference." *Hyland v. HomeServices of Am., Inc.*, 2012 WL 1575310, at *7 (W.D. Ky. May 3,

2012). This case challenges Tschetter's Advisement and Stipulation forms it provides to tenants facing eviction. Notwithstanding any individuals that may elect to opt out of the settlement, all class members will receive financial compensation in addition to vacation of judgments against them, and all future tenants from whom Defendant may seek to evict will benefit from Tschetter's improved forms.

Under the FDCPA, damages in a class action that may be awarded by a court are not to exceed the lesser of $500,000 or one (1) percent of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). Given that the limit of $500,000 would only apply to debt collectors with a net worth of more than $50,000,000.00, the one percent calculation would apply to Tschetter if the Parties were to proceed to trial. Here, a settlement fund of $60,000 represents a considerable amount from Tschetter, a Colorado-based law firm with twelve attorneys. Net worth under the FDCPA is typically performed as a balance sheet calculation. Although some courts have expanded the analysis to include equity, capital stock, and goodwill, *see Wisneski v. Nationwide Collections, Inc.*, 227 F.R.D. 259, 261 (E.D. Pa. 2004), that is admittedly a minority view, and even if such sums were included the result remains favorable.

Further, the recovery of approximately $240 per class member well-exceeds amounts that have been approved by courts in this Circuit and others. The Court in *Rhodes v. Olson Associates*, for example, approved an FDCPA settlement estimated to provide class members with an amount ranging "from $7.10 (assuming a highly unlikely, 100% claims rate), to $71.00 (assuming a 10% claims rate)." 308 F.R.D. 664, 667 (D. Colo. 2015). Similarly, the District of Kansas approved a settlement that provided "approximately $71.42" to each class member, citing in part to a case in the Northern District of California that approved a settlement providing $15.10 each to 901 class members. *Tripp v. Berman & Rabin P.A.*, No. 14-CV-2646-DDC-GEB, 2017 WL 86186, at *2 (D.

Kan. Jan. 9, 2017) (citing *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016)). By contrast, the District of Colorado denied approval of an FDCPA class settlement that would have provided "less than $0.14 each" at a 100% claims rate and only $2.70 each at the parties' estimated 5% claims rate. *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 660 (D. Colo. 2018). Here, the settlement fund is such that all class members who do not opt out of the settlement will receive approximately $240 each. There is no claims process. Accordingly, the monetary relief provided to the Class is undoubtedly favorable.

The Settlement Fund is of course in addition to the incentive award and any award of reasonable attorneys' fees—in no way do the payment of such amounts lower the relief available to the Settlement Class. It is also worth noting that the Monetary Relief is coupled with strong prospective relief that cures the alleged defects in Tschetter's forms and will result in hundreds of persons having judgments against them vacated. When viewed against the risks of continued litigation—including the possibility of no recovery at all—the Settlement presents an undeniably favorable outcome for members of the class.

**VII.   The Proposed Notice Plan is the Best Practicable in this Case.**

Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Dukes*, 131 S. Ct. at 2558. Rule 23(e)(1) further states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1).

Notice is considered adequate "if it may be understood by the average class member." Newberg, § 11:53 at 167. In substance, the notice must describe the nature of the case, the class definition, the claims and defenses at issue, and it must inform settlement class members that they

may enter an appearance through counsel if they so desire, request to be excluded from the settlement class, and that the effect of a class judgment will be binding on all class members. *See* Fed. R. Civ. 23(c)(2)(B).

As evidenced by the proposed notice attached as Exhibit B[2], the notice plan developed and agreed to by both Parties represents the best notice practicable under the circumstances. Using the class list, Tschetter will send Notice to each Class Member, via first class mail, in addition to sending notice via email to all class members for whom an email address has been located. (Settlement Agrmt. at § IV.3.c.) Tschetter is also required to re-mail notice to any forwarding address as noted on any notices returned as undeliverable. (*Id.* § IV.3.d.) The Notice will provide information to Class Members of their inclusion in the Class because they appeared on Tschetter's Class List. The Notices will provide the terms and provisions of the proposed settlement, including the settlement amounts. The Notice will further advise Class Members of their rights, including the right to be excluded from, comment upon, and object to the Agreement and the procedures for taking such actions. (*Id.* § IV.4.b.)

Tschtter will also oversee the administration of the Settlement. As such, it will receive and forward any objections and requests for exclusions and ensure, following Final Approval, that checks are appropriately drawn and disseminated.

All told, the Notice Plan comports with due process and should be approved the Court.

## VIII. Conclusion

For the foregoing reasons, Plaintiff respectfully asks that the Court grant preliminary approval of the Settlement Agreement, approve the form and manner of notice described above, set dates for Settlement Class Members to object or request to be excluded, and schedule a Final

---

[2] The Parties continue to work on finalizing the draft Notice and to the extent there are any substantive edits they can be provided to the Court at the preliminary approval hearing.

Approval hearing.

Dated: December 1, 2023                    Respectfully submitted,

                                                       **SHAWNTE WARDEN**, individually
and on behalf of all others similarly situated,

By: /s/ *Jason Legg*
One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Jason Legg (#42946)
CADIZ LAW, LLC
501 S. Cherry St., Suite 1100
Denver, CO 80246
jason@cadizlawfirm.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on December 1, 2023 to all counsel of record.

/s/ *Jason Legg*