IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:22-cv-0271-CNS-NRN

**SHAWNTE WARDEN**, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

**TSCHETTER SULZER, P.C.**, a Colorado professional corporation,

      Defendant.

## SETTLEMENT CLASS REPRESENTATIVE WARDEN'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Settlement Class Representative Shawnte Warden ("Plaintiff" or "Warden"), individually and on behalf of the Settlement Class, moves the Court, in accordance with Federal Rule of Civil Procedure 23, the Court's Order granting Preliminary Approval to Class Action Settlement (dkt. 78), and the Court's Amended Order Granting Preliminary Approval to Class Action Settlement (dkt. 80), for an Order granting final approval of the proposed class action Settlement Agreement agreed to by the parties and, in support, states as follows:

### I. INTRODUCTION

The Court should grant Final Approval to the Class Action Settlement reached in this case. This lawsuit, filed January 31, 2022, challenges certain practices of Defendant Tschetter Sulzer, P.C. ("Defendant" or "Tschetter") under the Fair Debt Collections Practices Act ("FDCPA" or "Act"), 15 U.S.C. § 1692, *et seq*. Specifically, Warden alleges, on behalf of herself and a Class, that Tschetter violated the FDCPA by providing tenants who owe a debt to their landlords with a form Advisement and Stipulation that Plaintiff alleges were deceptive in encouraging tenants to

voluntarily vacate their homes before they otherwise would have.

Following motion practice, written discovery, and depositions, the Parties, with the help of a well-respected neutral, the Honorable Ann B. Frick of JAG, Inc. in Denver, Colorado, reached a Class Action Settlement Agreement. *See* Class Action Settlement Agreement, Dkt. 77, Ex. 1. The Settlement (i) establishes a settlement fund of sixty thousand dollars ($60,000.00 USD) for the payment of all class members who do not opt out; (ii) requires that Tschetter vacate judgments against class members where no objection is raised or where landlord or management companies fail to respond within 14 days of a letter; (iii) revises Defendant's Advisement and Stipulation forms in a way that minimizes confusion; (iv) obligates Tschetter to pay notice and administrative expenses, an incentive award approved by the Court not to exceed $10,000, and an award of reasonable attorney's fees approved by the Court not to exceed $150,000.

On January 11, 2024, this Court entered an Amended Order Granting Preliminary Approval. Amd. Prelim. App. Order, Dkt. 80. In doing so, the Court defined the Settlement Class as "All tenants who signed the Stipulation between January 31, 2021, and February 28, 2022, and for whom any Judgment of Possession has not yet been vacated." Amd. Prelim. App. Order, Dkt. 80 at ¶ 3 (citing Settlement Agrmt. at § II.27). The Settlement Class consists of 220 persons (168 households).

On January 16, 2024, notice was disseminated by the Settlement Administrator, Atticus Settlement Administration, to the Class Members. 81 notices were returned as undeliverable, and notices were re-mailed to 36 updated addresses so far. To date, no Settlement Class Members have objected or requested to be excluded. *See* Project Status Report, filed herewith as Exhibit A.

As set forth below, the Settlement Agreement represents an excellent result for the Class members and should receive Final Approval.

II.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    A.     **The FDCPA**

The FDCPA prohibits debt collectors from employing false, deceptive, or misleading means or engaging in unfair practices when collecting debts. 15 U.S.C. § 1692e, 1692f. An entity that "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" is considered a "debt collector" subject to the requirements of the FDCPA. *Id.* § 1692a(6). The FDCPA is a strict liability statute, and litigants need only show that a single violation of the FDCPA occurred to be entitled to summary judgment. *See O'Connor v. Check Rite, Ltd.*, 973 F. Supp. 1010, 1020 (D. Colo. 1997).

    B.     **Plaintiff's Claims and Litigation History**

This case was filed on January 31, 2022. (Dkt. 1.) Tschetter is a Colorado law firm that advertises itself as the State's largest "landlord advocacy firm" with extensive experience handling evictions. Warden was a tenant in the Mint Urban Infinity Apartment complex in Glendale, Colorado, from 2019 to early 2021, at which point she fell behind on rent payments and intended to move out. (*See* Dkt. 40 at ¶¶ 33–34.) Defendant filed an eviction lawsuit and collection proceeding against Warden on behalf of her landlord on January 22, 2021, and on January 31, 2021, Tschetter provided her with a link to its form Stipulation and Advisement hosted on its website. (*Id.* ¶¶ 35, 40–45.) Confused by its terms, Warden believed the Stipulation would provide her with additional time to stay in the unit and that any judgment against her would be vacated. (*Id.* ¶ 46.) She then signed the form, vacated her home, and received confirmation from her landlord that the eviction case was dismissed. (*Id.* ¶¶ 46, 49–50.) However, Tschetter did not move

3

to vacate judgment—instead, it filed a proposed Writ of Restitution, and Plaintiff was subsequently denied housing after a tenant screening revealed an outstanding action that had not been dismissed. (*Id.* ¶¶ 51–54.)

Defendant filed a motion to dismiss for lack of jurisdiction on March 17, 2022 (Dkt. 17.) On June 2, 2022, the Court granted Plaintiff leave to amend and denied the motion to dismiss without prejudice. (Dkt. 39.) Warden filed her amended complaint on June 7, 2022, and Defendant moved again to dismiss on June 21, 2022. (Dkts. 40, 41.) Following complete briefing, the Court denied the motion on December 5, 2022. (Dkt. 51.) Tschetter thereafter filed a motion for reconsideration, which the Court denied on March 15, 2023. (Dkts. 52, 61.)

Following several months of discovery, on September 18, 2023, the Parties attended a full-day mediation session with the Hon. Ann B. Frick (Ret.) (the "Mediator") of Judicial Arbiter Group, Inc., in Denver, Colorado. The mediation was successful, and the Parties reached an agreement to settle the claims at issue and provide relief to Plaintiff and the purported class.

As set forth above, on January 11, 2024, this Court entered an Amended Order Granting Preliminary Approval, defining the Settlement Class as "All tenants who signed the Stipulation between January 31, 2021, and February 28, 2022, and for whom any Judgment of Possession has not yet been vacated." Amd. Prelim. App. Order, Dkt. 80 at ¶ 3 (citing Settlement Agrmt. at § II.27). The Settlement Class consists of 220 persons (168 households). The Settlement Administrator disseminated notice on January 16, 2024. No Settlement Class Members have opted out or objected.

## III.   KEY TERMS OF THE SETTLEMENT

The "Settlement Class" or "Class" is defined as "all Tenants who signed the Stipulation between January 31, 2021 and February 28, 2022 and for whom any Judgment of Possession has

4

not yet been vacated." (Settlement Agrmt. at § II.27.) The Parties understand the Settlement Class to consist of approximately 220 individuals. *See* Ex. A.

The Settlement provides Class Members with substantial monetary relief. Specifically, Tschetter must establish a Settlement Fund of $60,000, (*Id.* at § II.31), which will be used to pay all class members who do not opt out approximately $240 each, and any additional class members identified will increase the settlement fund by $240. The Agreement further provides that, separate from the settlement fund, Tschetter must pay all Settlement Administration Costs, as well as any Incentive Award and Fee Award as approved by the Court, up to $10,000 and $150,000, respectively. Any amounts remaining in the Settlement Fund after payment of all Settlement Class Members, and after at least one attempt at re-mailing, will be paid to a *cy pres* recipient approved by the Court.

In addition to the $60,000 in cash relief, the Settlement Agreement also requires that Tschetter adopt the following prospective measures: (1) Tschetter must vacate judgments against class members where no objection is raised or where landlord or management companies fail to respond within 14 days of a letter notifying them of intent to vacate; and (2) Tschetter must revise its Advisement and Stipulation forms, subject to approval by Class Counsel. (Settlement Agrmt. § III.5.) Hence, the Settlement not only compensates Settlement Class Members for Tschetter's alleged violations of the Act, it works to ensure that they won't experience any future harms related to pending collections actions and that tenants in the future will be presented with improved forms that do not give rise to the same confusion alleged by Plaintiff.

In exchange for the benefits to the Class, Tschetter will receive a full release of any claims relating to Tschetter's use of the subject Advisement and Stipulation forms made under the FDCPA or any similar state statute or law. (Settlement Agrmt. § V.) The Release includes

5

unknown claims, which are limited to claims that could have been brought in the litigation.

Such terms are decidedly favorable to the Settlement Class, and the Court should grant final approval to the instant Settlement.

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE APPROVED

As set forth in greater detail below, the settlement reached by the Parties is fair, reasonable, and adequate, and fit for final approval—the agreement satisfies the requirements of Federal Rule 23, as well as the considerations applicable in the Tenth Circuit. As discussed below and in turn, the factors weigh in favor of granting final approval to the Settlement reached between Warden and Tschetter.

### A. The Proposed Settlement Satisfies Rule 23's Factors as Fundamentally Fair, Reasonable, and Adequate.

Rule 23(e) contains a list of factors for courts to consider the fairness, reasonableness, and adequacy of a class action settlement, including:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

6

FED. R. CIV. P. 23(e)(2); *O'Dowd v. Anthem, Inc.*, No. 14-CV-02787-KLM-NYW, 2019 WL 4279123, at *12 (D. Colo. Sept. 9, 2019). The factors are intended "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *O'Dowd*, 2019 WL 4279123 at *12. Each factor weighs in favor of approval of the settlement reached here.

### 1. Adequacy of Representation

The first factor identified in Rule 23(e)(2) is whether "the class representatives and class counsel have adequately represented the class." FED. R. CIV. P. 23(e)(2)(A). Here, both Settlement Class Representative Warden and Settlement Class Counsel have adequately represented the Settlement Class, and their efforts have resulted in a favorable resolution.

Warden has stepped forward, put her name on the pleadings, and done everything asked of her as a named Plaintiff and representative of the class, including responding to discovery and sitting for her deposition. She declined any attempts to settle her claims more on an individual basis, pushing instead for class-wide settlement and relief. Further, Settlement Class Counsel specialize in the litigation of consumer class actions of similar size and complexity, and they have litigated and settled FDCPA class actions and other consumer protection and privacy actions.

The Parties have been litigating this matter for two years, including significant discovery. Warden and her counsel reached the underlying Settlement through extensive negotiations and formal mediation. Faced with the prospect of receiving nothing if Defendant were to prevail, Class Counsel are confident that they have provided adequate representation on behalf of the class in order to achieve the positive outcome in question. This factor weighs in favor of final approval.

### 2. Arm's-Length Negotiation

The next factor considers whether the proposed settlement was "negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B). This consideration is designed to thwart collusion between

7

parties—in general, the involvement of a neutral mediator in reaching a settlement "virtually insures" that the negotiations were non-collusive and conducted at arm's length. *Bert v. AK Steel Corp.,* 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008); *see also Satchell v. Fed. Express Corp.,* 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator . . . confirms that the settlement is non-collusive.").

In granting preliminary approval to the settlement, the Court previously found that the settlement agreement was "the result of arms' length negotiations involving experienced class action attorneys and overseen by an experience[d] third-party mediator." (Dkt. 78 at ¶ 6.) The case was mediated with the help of the Hon. Ann B. Frick of Judicial Arbiter Group, Inc., a respected mediator in Denver. Through the mediator's assistance, the Parties were able to reach a settlement deal that reflects fair, reasonable, and adequate relief for the Settlement Class. The Parties' agreement is not the result of collusion, and the negotiations always stayed at arm's length. As such, this factor also weighs in favor of final approval.

### 3. Adequacy of Relief

Rule 23(e)(2)'s third factor considers adequacy of relief, including: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of methods of distributing relief and processing class-member claims; and (3) the terms of any proposed attorneys' fees award, including timing of payment. FED. R. CIV. P. 23(e)(2)(C). Each of these considerations weighs in favor of granting final approval.

The Settlement establishes a settlement fund of $60,000 from which all class members who do not opt out of the settlement will receive $240 each. In addition to the settlement fund, Tschetter will pay for notice and administration expenses, as well as any incentive award to Warden approved by the Court (not to exceed $10,000) and payment of any attorneys' fees and costs award

8

to Class Counsel approved by the Court (not to exceed $150,000).[1] When granting preliminary approval, the Court found that the agreement "substantially fulfills the purposes and objectives of the class action against Tschetter and provides beneficial relief to the class." (Dkt. 78 at ¶ 5.) The Settlement Fund provides for full payment of $240 to each class member that does not opt out, and indeed any payments for administration and notices costs, as well as an incentive award and fees award, will not impact the payment to each class member. In other words, the fund remains as beneficial to class members now as when it was preliminarily approved.

A cash payment of $240 to each class member is substantial and, in fact, exceeds the class member payments approved in many FDCPA settlements, as follows:

| Case name | Amount per Claimant |
| --- | --- |
| *Martin v. Trott Law, Inc.*, No. 15-12838, 2018 WL 4679626, (E.D. Mich. Sept. 28, 2018) | $82.10 |
| *Schuchardt v. L. Off. of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016) | $15.10 |
| *Harper v. L. Off. of Harris & Zide LLP*, No. 15-CV-01114-HSG, 2017 WL 995215 (N.D. Cal. Mar. 15, 2017) | $10 |
| *Zaslavskiy v. Weltman, Weinberg & Reis Co., LPA*, No. 18CV4747DLIRER, 2022 WL 1003589 (E.D.N.Y. Jan. 5, 2022) | $82.03 |
| *Newman v. Eduardo Meloni, P.A.*, No. 0:20-CV-60027-UU, 2020 WL 5269442, at *3 (S.D. Fla. Sept. 4, 2020) | $238 |
| *Alderman v. GC Servs. Ltd. P'ship*, No. 2:16-cv-14508, 2019 WL 1605656, at *2 (S.D. Fla. Apr. 9, 2019) | $10 |
| *Riley v. Home Retention Servs., Inc.*, No. 14-20106, 2015 WL 11216333, at *3 (S.D. Fla. Mar. 17, 2015) | $100 |

---

[1] Concurrent with this motion, the Settlement Class Representative has filed a motion for an award of reasonable attorneys' fees and incentive award.

9

| | |
|---|---|
| *Riddle v. Atkins & Ogle Law Offices, LC*, No. 19-249, 2020 WL 3496470, at *2 (S.D.W. Va. June 29, 2020) | $27.50 |
| *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) | $10.92 |
| *Hall v. Frederick J. Hanna & Assocs., P.C.*, No. 1:15-cv-03948, 2016 WL 2865081 (N.D. Ga. May 10, 2016) | $10 |
| *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-00142, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) | $31 |
| *LittleKing v. Hayt Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) | $7.87 |
| *Aikens v. Malcolm Cisneros*, No. 5:17-CV-02462-JLS-SP, 2020 WL 10828062, at *5 (C.D. Cal. Jan. 2, 2020) | $153.33 |

In light of Settlements approved below the individual payment amount achieved in this case, the instant Settlement more than meets the requirement for adequate relief. Further, considering that this monetary amount is in addition to prospective relief that Tschetter must implement with respect to class members and its own Advisement and Stipulation forms—including the vacation of judgments—the Settlement is more than fair, reasonable, and adequate.

The relief is also adequate when weighed against the continued costs, risks, and delays associated with carrying this case through to trial—including the potential for no recovery at all. Again, the Parties litigated this matter for years, and Tschetter would continue to defend its position if no settlement were reached. As a result, a settlement representing discounted recovery is reasonable. *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *11 (N.D. Cal. Apr. 22, 2010) (noting that "'even where the total settlement fund is small,' it may not be 'unreasonable in light of the perils plaintiffs face in obtaining a meaningful recovery on their claims'") (citing *In re Critical Path, Inc.,* No. 01-CV-00551, 2002 WL

32627559, at *7 (N.D. Cal. June 18, 2002)); *Jaffe v. Morgan Stanley & Co.,* No. 06-CV-3903, 2008 WL 346417, at *9 (N.D. Cal. Feb.7, 2008) ("The settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial.").

The Parties have engaged a competent settlement administrator, Atticus Administration LLC, to provide notice, monitor opt-outs and objections, and ultimately disburse payment via check to all participating class members. These methods of distribution and processing are effective, and—when considered with the value of the settlement, the risks and costs associated with continued litigation, and the inability for administration costs, fees, or any incentive award to negatively impact payment to class members—the relief obtained in the underlying settlement is undoubtedly adequate. Accordingly, this factor weighs in favor of final approval.

### 4. Equitable Treatment of Class Members

The fourth and final factor in Rule 23 considers whether the settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). In *O'Dowd*, the Court approved a settlement that distributed funds to class members on a *pro rata* basis applicable to everyone, and it noted favorably that the settlement did not "improperly grant preferential treatment to Plaintiff or segments of the Class," notwithstanding the separate incentive award to the named plaintiff that was found appropriate and reasonable. *O'Dowd*, 2019 WL 4279123 at *14. The same is true here—the settlement does not give preferential treatment to any particular class members or sub-classes; rather, each class member that does not opt out will receive the same payment of $240. While Plaintiff does seek an incentive award in her concurrently-filed Motion for Fees, such an award is standard in light of the efforts required of a named plaintiff, and it does not render the treatment of class members inequitable, as the payment of $240 to all class members

11

would in no way be impacted by an incentive award to Warden. Just as the previous three factors in Rule 23(e), this factor weighs in favor of granting final approval to the settlement.

### B.  The Settlement Satisfies the Tenth Circuit's Factors on Final Approval.

Prior to an amendment to Rule 23(e) and the inclusion of the above factors, the Tenth Circuit established its own factors for determining whether a settlement is fair, reasonable, and adequate, and therefore suitable for final approval. The Tenth Circuit factors are largely consistent with the Rule 23(e)(2) factors above—they consider: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.* (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir.1993)); *see also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Just as the Rule 23(e) factors are satisfied, the Tenth Circuit factors weigh in favor of granting final approval to the settlement reached here.

#### 1.  Fair and Honest Negotiation

As set forth in *Jones*, the first factor asks "whether the proposed settlement was fairly and honestly negotiated." *Jones*, 741 F.2d at 324. This factor is functionally identical to the second factor of Rule 23(e)—whether the negotiations were non-collusive and conducted at arm's length. *See* FED. R. CIV. P. 23(e)(2)(B). As discussed above, the negotiations here occurred after nearly two years of litigation and with the help of a qualified, well-respected neutral. The Court previously recognized the fair and honest nature of the Parties' negotiations, as it was "the result of arms' length negotiations involving experienced class action attorneys and overseen by an

12

experience[d] third-party mediator." (Dkt. 78 at ¶ 6.) Just as it did above, this factor weighs in favor of final approval.

### 2. Uncertainty of Outcome and Value of Immediate Recovery

The second and third factors, which inquire into the uncertain outcome and unresolved questions of law and fact in the litigation, as well as whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, also support approval. *See Jones*, 741 F.2d at 324. These factors balance the "risk of continued litigation…against the certainty and immediacy of recovery from the Settlement." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (*citing In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). When considering the immediate recovery provided by a fair settlement versus the uncertainty of continued litigation, "it has been held proper to take the bird in hand instead of a prospective flock in the bush." *Kim v. Space Pencil, Inc.*, No. 11-CV-03796, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) (quoting *Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005)).

In this case, given that several hurdles remain (including the need to move for certification of the class and any subsequent motions for summary judgment) this factor weighs in favor of approval of the settlement. *See Garner*, 2010 WL 1687832, at *10 (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)). The expense, duration, and complexity of continued litigation certain to occur in the absence of a Settlement would be significant, and time and expenses would be expended by both Parties to brief motions on class certification and summary judgment. Exacerbating the inherent risk of pursuing and litigating the merits of any case is the unavoidable risk attributable to seeking adversarial class certification, as well as maintaining class status through the remainder of the case. Because "[a] district court may decertify a class at any time," Plaintiff would not only need to move for and obtain class certification, but she could be

13

faced with and need to defend subsequent efforts to decertify. *See Rodriguez*, 563 F.3d at 966 (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982)). In addition to motions, significant labor and expenses would be required of both Parties to prepare for trial, including the preparation and calling of witnesses and experts. *See Young v. Polo Retail, LLC*, 02-CV-4546, 2007 WL 951821, at *3 (N.D. Cal. Mar. 28, 2007). The uncertainty of outcome presents risk for both parties, and given the potential for a statutory award, the losing party would likely appeal the decision as a matter of course, resulting in the expenditure of more time, money, and resources. This is especially so in light of Defendant's practice of filing motions to reconsider.

The Parties have reached a settlement agreement that provides substantial monetary relief to the class members, as well as meaningful prospective relief—neither of which would be guaranteed without the settlement. In light of the expenses and inherent risk involved in continued litigation, this factor weighs in favor of approval.

### 3.   Judgment of the Parties

The fourth factor considered by the Tenth Circuit—"the judgment of the parties that the settlement is fair and reasonable"—likewise supports final approval. *See O'Dowd*, 2019 WL 4279123 at *12. The Parties were able to reach the underlying settlement with the help of a professional mediator, and notwithstanding any individuals that may opt out of the settlement, all of the class members will receive financial compensation in addition to vacation of judgments against them, and all future tenants from whom Defendant may seek to collect a debt will benefit from Tschetter's improved forms. When viewed against the risks of continued litigation—including the possibility of no recovery at all—the Settlement presents a favorable outcome for members of the class that is agreeable to both the Parties. Thus, this factor also weighs in favor of granting final approval.

14

### C. The Settlement Satisfies Additional Factors Considered by the Tenth Circuit.

The Tenth Circuit has identified other factors that may be considered in the final approval analysis, including: (i) the risk of establishing damages at trial; (ii) the extent of discovery and the current posture of the case; (iii) the range of possible settlement; and (iv) the reaction of class members to the proposed settlement. *O'Dowd*, 2019 WL 4279123 at *12 (quoting *Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2014 WL 3906205, at *2 (D. Colo. Aug. 11, 2014). Of these four additional factors, the risk of establishing damages and range of possible settlements have been discussed above, and as demonstrated in Section IV.A., *supra*, the monetary relief granted is considerably greater than the range of individual class member awards that are frequently approved in FDCPA matters. The remaining two factors further weigh in favor of final approval of the settlement.

#### 1. Extent of Discovery and Current Posture

The Tenth Circuit has identified "the extent of discovery and the current posture of the case" as one additional factor for consideration. *O'Dowd*, 2019 WL 4279123 at *12. While there is no specific stage or quantity of discovery that automatically tips this factor in favor of approval, courts consider whether "the parties have sufficient information to make an informed decision about settlement." *See, e.g.*, *Gardner v. GC Servs., LP*, No. 10CV0997-IEG CAB, 2012 WL 1119534, at *5 (S.D. Cal. Apr. 2, 2012) (quoting *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir. 1998)). Courts often find this factor satisfied even in cases that have not progressed beyond the pleadings stage—ultimately, all that is required is that the parties demonstrate a "clear view of the strengths and weaknesses of their cases." *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 5458986, at *8 (S.D. Cal. Dec. 10, 2008).

This case has been diligently litigated for two years, including briefing of two separate

15

motions to dismiss, a motion to stay, and a motion for reconsideration, several months of discovery, and a productive mediation session. Achieving this stage of litigation has allowed both Parties to conduct discovery and develop a thorough understanding of the strengths and weaknesses of their respective claims and defenses; in turn, this understanding has resulted in achieving the underlying Settlement. As such, the Parties have sufficient information, and the proceedings are sufficiently advanced to support final approval.

### 2.      Reaction of Class Members

The reaction of Class members to the settlement also favors final approval. The deadline for Class Members to opt-out of or object to the Settlement was set for 75 days from the Court's Order granting preliminary approval, or February 28, 2024. As of the filing of this Motion, no Class Member has opted out of or object to the settlement—the absence of objections provides strong evidence of favorability and demonstrates the strength and reasonableness of the settlement. *See* Ex. A; *see also e.g. Churchill Vill.,* 361 F.3d at 577; *In re Mego Fin. Corp.,* 213 F.3d at 459 (one objection out of a potential class of 5,400); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (zero objections and sixteen opt-outs out of a class of 329 members). As a result, the specified relief of $240 will be paid to all of the class members in accordance with the terms of the settlement, without the need for members to file claims. These results, specifically the lack of opposition to the Settlement, demonstrate a positive reaction from class members that warrants final approval.

### IV.    CONCLUSION

As outlined above, each of the factors for consideration of final approval, under both Rule 23 and Tenth Circuit precedent, favor approval of the underlying settlement. For the foregoing reasons, Plaintiff respectfully requests the Court enter an Order granting Final Approval to the Class Action Settlement achieved in this matter and provide any such further relief as the Court

16

deems reasonable and just.

Dated: February 14, 2024               Respectfully submitted,

                                                  **SHAWNTE WARDEN**, individually
and on behalf of all others similarly situated,

By: */s/ Jason Legg*
One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Jason Legg (#42946)
CADIZ LAW, LLC
501 S. Cherry St., Suite 1100
Denver, CO 80246
jason@cadizlawfirm.com

*Counsel for Plaintiff*

17

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on February 14, 2024, to all counsel of record.

*/s/ Jason Legg*